Good morning to you all. I'm Tom Beck, appearing for the Pelenty Brothers. I see this as being a rather straightforward and simple matter. The evidence presented in our opposition to the defendant's motion for summary judgment presented what I believe to be sufficient evidence that a jury hearing it could have concluded that the two officers that we've sued for conspiring to deprive them of their rights. Mr. Beck, let me let me straighten out a couple of things to get my mind in syncopation with yours. One, the only count alleged here is a count of conspiracy. There is no count two for 1983 violation as to what's his name, Krogman? Krogman. Krogman, and no separate count as to Lavelle. It has to be a conspiracy or nothing, right? I don't see it that way. Well, now tell me why. Because the conspiracy can be by one. We approached it as a. Is this a bathtub conspiracy, a one-person conspiracy? No, no, no, no. I'm not suggesting that. I pled it as a conspiracy because I believe there was a conspiracy and we had evidence. That was not my question. That if the jury found one not reliable for a conspiracy, they could still find the other. In other words, when this case is presented to a jury, hoping that they they arise, that they could find that Krogman, for example, because he had the DNA, his possession is more culpable than than than his boss Lavelle was. I see that the verdict could come out as against Lavelle. I mean, against Krogman or the other wife, vice versa, or both for the violation of the rights. Time following you. If there's no conspiracy between Krogman and Lavelle. How can you find Krogman liable for a conspiracy? You wouldn't. Then you don't find them liable for anything because you haven't pleaded a section 1983 violation of constitutional right case against Krogman. Well, I played such an account. I agree. That has not been played. So let's go back to the issue. As far as I see it, you either stand or fall on whether you have shown as a tribal issue of fact. As to the existence of a conspiracy between Krogman and Lavelle to plant evidence against the plenty Polinsky brothers. I'll go with you there. Good. Now, my question to you is this. What is your best evidence as to the creation of a material tribal issue of fact that Lavelle conspired with Krogman? In Lavelle's case, the testimony that he gave at the preliminary hearing and at the trial. All right. So that's a conclusion and an abstraction. Give me the particulars. What did Lavelle say at the prelim and where else at the at the not the trial at the motion? Well, in the underlying criminal cases of preliminary examination, which one of them testified. In fact, they both testified. And then at the time of the trial, that trial. OK. So to answer your question directly, Lavelle's testimony that when men when when Jack was asked whether he smoked Marlboros and went for his pocket and discovered he didn't have his cigarettes in his pocket as he expected them to be was a lie. It wasn't part of the evidence. He made it up. And he could only have made it up because he was joining forces with Krogman, that that cigarette pack was evidence that that that knifing took place outside the RV. That's one of the statements. Why? I'd like you to tie that. Lavelle stated at the preliminary hearing, Jack reached for a pack of Marlboros. And let's say that it's an absolute fabrication. Why must Lavelle have said that only if he was in concert and in conspiracy with Krogman? Would there be any other reason to say that the object of that statement was to ensure their conviction and deprive them of that defense? He could be mistaken. He could have thought that up himself without talking to Krogman, right? But he made the affirmative representation. And it didn't end there. But isn't your position that reasonable jurors could infer the other conclusion? I think yes. And in the summary judgment motion. It doesn't have to be the only conclusion. No, not necessarily the only one. But this is the point of summary judgment. I'm entitled as the non-moving party to the inference that most favors me. What's the evidence that Krogman was alone in the trailer? Did the photographer say that? His own testimony. His own testimony. And didn't Officer Lavelle say that there was not a time when Krogman was alone in the trailer? I don't believe so. I believe that what I rested my position on was that Krogman's admission that he was in that trailer by himself. I'm asking you a different question about the other officer. Lavelle. Whether he denied that Krogman was alone in the trailer. I'm sorry. I cannot answer that question. All right. What's the evidence that supports the notion that there was a photograph taken with a pack of Marlboro cigarettes, with a blade and without a blade? A few minutes apart. Right. And so who was present at that time other than the photographer, please? I believe Krogman. That is the evidence. I'm believing from memory. I can't cite it in the record, but that's my memory. All right. Or potentially even both of them doing the first walkthrough. But I may be mixing up the walkthrough with the photography. There's a representation that the knife blade that was found outside had DNA but no blood on it. That's correct. That comes out of the forensics report and the testimony of the crime scene investigator. So it's peculiar to me, and maybe Judge Bea had the same question, but that seemed to come out for the first time in the criminal trial. Is that right? Yes, that's correct. Well, these guys were in custody the whole time, so they didn't know what was going on. As I was litigating the case, I discovered that that's where it emerged for the very first time. The second knife blade. That there was a second knife blade alleged, that the blade was found outside. As you know, the blade, that's that black-handled knife. Let me back up so it makes sense. The young man, Greenberg, maintained they came out with two knives slashing. He never said that the knives broke, any one of them broke. They couldn't find knives because that never happened. But this knife blade shows up at the trial, and the only evidence pinning it to Arzola was that tiny little DNA, not blood, at the tip of it. How could that possibly be when this knife was in a drawer in the RV for the entire time that this incident was occurring? My contention is, and I'm hoping I'm answering your question, that the only person that this evidence demonstrates could have put that DNA on there was Krogman, because he took two swabs of buccal DNA, buccal swabs from the inside of his mouth, in the emergency room, and none of the CSI people I deposed had any explanation for why that was done. That tags Krogman. How does it tag Lavelle? Well, it doesn't tag Lavelle individually, but the team working as a team together and... Tell me why Lavelle had to play a role in Krogman planting the evidence. He didn't. Then I come back to the issue. You may have a case against Krogman, but you didn't plead that. You pleaded a conspiracy. Tell me why Lavelle is a conspirator in Krogman's planting the evidence. As to the putting the DNA on? No. I can't ever prove that. I can prove that they had a meeting of minds, that these guys should be deprived of their self-defense defense in the underlying criminal case. Tell me what the evidence about proving the meeting of minds is. On October 17th, Lavelle testified under oath that Jack did not inform him that Arzola attempted to forcibly drag Jack out of the RV. That was his affirmative representation. I argue that that could only have been made if he was of a like mind with his co-partner, the co-defendant. But in order for that to be significant, some jury someday would have to believe Greenberg, right? Correct. And Greenberg obviously is a key figure here because he turned coat on them and told us what happened. Let me throw you a lifeline. Let me throw you a lifeline. Let's do it. Didn't Lavelle testify that he saw the blade and the Marlboro pack about 400 feet away from the van before Krogman arrived? Oh, you're testing my memory. I do not know the answer to that specifically. I think he did. I do know that he did testify. He witnessed those two in situ. Right. He got there at 7.15 in the morning and Krogman arrived at 9.54. Well, then it was then you recognize something. And if he saw that, which wasn't there, according to your affidavits, right? As we know from Corey Greenberg, when that incident happened, there was no cigarettes outside and there was no knife blade. And if it was the evidence that Lavelle saw it before Krogman even arrived, your point is made. And I'll adopt it as being in the evidence, even though I don't particularly remember it. I want to reserve some time. And I notice I have four minutes and 35 seconds. So let me step down. Counsel? You want to pick up on the lifeline I gave counsel? Well, Your Honor, what I'd like to do is specifically address the fact that this case does not display any evidence of a meeting of the minds between Krogman and Lavelle. Now, I understand the question that was posed to counsel in terms of any temporal disparity that may have existed. Not temporal disparity. Look, Lavelle got there early. He testified that he saw the knife blade, which suspiciously has DNA from our Zola, but no blood. Contrary to the white handle knife, I suppose. All right. Contrary to the scissors, which have disappeared. Now, if he says that he saw the knife blade and the pack of cigarettes when he arrived at 715 a.m. And Krogman planted them after he arrived at 950. Doesn't that sort of indicate that Lavelle is in league with Krogman and tailoring his testimony to make Krogman more credible? No, and I would disagree. Tell me why. Because I think that in order to get from point A to point B, as Your Honor has expressed here, there are far too many inferences that exist. There are far too many uncorrupted. But they only need one. Well, but that's not what exists here. What we have here is metaphysical doubt. We have exactly what the maths is. A reasonable juror could conclude, as Judge Bea is suggesting. Well, I think the problem is, is that when you attempt to link these two together, there isn't an equivalence. You can't get there based upon these inferences. The problem is, is that there's. If Lavelle made up a story to confirm and corroborate Krogman, isn't that, isn't it permissible inference that he made up that story because he's in league with Krogman? But where's the evidence? That's a theory. And I. If you find a trout in a milk bottle, said Henry Davis Thoreau, it's only circumstantial evidence that someone put it there. But it's damn good circumstantial evidence. Well, maybe in that case I would agree with you. But in this case, I don't believe we have. Where could he have come up with the idea that he saw a blade and a Marlboro box when he arrived at 715 a.m.? Other than Mr. Krogman telling him, say that you found that when you arrived. Because otherwise, if it wasn't there till I arrived, they may get the idea I planted it there. Okay, Your Honor. All I can tell you is, is that I do not agree with that circumstantial inference. And what I will. What is wrong with this? Logically with that circumstantial. Is there any other source in the evidence from which you can conclude that Lavelle, saying he found the knife and the Marlboro box, could be produced by something other than a communication from Krogman? I cannot divine here before this Court. No, no, no. You have to divine. You have to tell me an inference from some other evidence that is more probable and hopefully rebuts the possibility that Krogman told Lavelle, tell the story. I cannot specifically explain why there may be a disparity as to why that evidence was there at that specific time. I cannot give you a satisfactory answer. You've got to do, what you've got to do is to tell me, Judge, there's a much more commonsensical reason why Lavelle found that there is 715 than the fact that Krogman told him to find it there. Here's what I'd like to do, Your Honor. It may not be satisfactory for the Court, but I'd like to do it in any event. I cannot get into a hyper-technical analysis of the minutia in any way that's going to necessarily be satisfactory. It's a convoluted case. But what I'd like to What you're arguing is that the facts are inconvenient. No, I'm not arguing the facts are inconvenient. What I'm saying is, is that based upon the controlling precedent in the Ninth Circuit, what we have here is no plausible motive. So if we were to accept Your Honor's theory about what happened, I cannot tell you, nor can the appellant, nor can anyone in this case, why the officers would have any incentive whatsoever to arrive on scene of an objectively insane stabbing incident and somehow have the reason, motivation to orchestrate, plant, tamper, and spoliate any of this evidence to favor one side or the other. Can I ask you a foundational question? Sure. Is motive an essential element to a conspiracy? Well, it's – according to Matsushita, the United States Supreme Court case in 1986, it is highly relevant when we're dealing with an entire matrix of metaphysical considerations that have been set forth by the appellant. Do you mean the answer to the question is yes or no? No. The elements of a conspiracy claim are whether or not the individuals had an express or implied agreement to deprive an individual of their civil rights. Know what they are. And secondly, whether or not the deprivation of the civil rights occurred. And so how does this get – can you get back to the question? And the question being? I'm sorry. I don't recall based upon my – You want us to draw a different inference, but this is a summary judgment ruling. Sure. And the question is why a reasonable juror couldn't decide that there was a conspiracy. Because, I mean, there's several pieces of circumstantial evidence here. But, of course, the most concerning is the photograph that shows the package of cigarettes with no blade, followed by the photograph that shows the package of cigarettes with a blade. I'd like to definitely clarify that point because I think that there's a gap here. And if the court looks at the excerpts of record volume one, you'll see in the oral argument that there was strenuous point made with respect to the photographs. And counsel and – all of the counsel got together and looked at that photograph to blow it up. This is a photograph that was depicted at night from a far distance. This is a wide-angle photograph. So the fact that something that's small in the sort of distance of this photograph isn't discernible, but when you blow it up, you can see something there. So it's a vast mischaracterization. The records here aren't from far away. They're equidistant. Right. But there's not one photograph where something's there and something's not. What we have is a wide-angle photograph where something's not discernible, but that doesn't mean it's not there. That's sure not how it looks here. Well, the fidelity of the photograph, unfortunately, deprived all the parties from making a conclusive determination one way or the other as to what that photograph was depicting. Is this in your brief? I'm sorry. I don't know specifically if this point was discussed in the brief because the photograph issue was something that counsel and all of us met together and we looked at the photographs and there's no conclusive indication that magically something is there in one instance and something isn't in the other. So that, in our eyes, does not raise a tributary issue. Isn't that an issue of fact? It's an issue of fact. In terms of. . . I mean, isn't that exactly what a jury does? It takes a look at two exhibits and says, well, maybe the blade is there and maybe the blade isn't there. And I'm not, you know, this is. . . I've got to find beyond a reasonable doubt or, in this case, to prompt to the probabilities that this existed and it doesn't show right. So I'm not going to. . . I'm going to say there's no conspiracy. That's what a jury does. Well, and my response to that, Your Honor, is that when you look at the decision of Ting v. United States, 1991, the Ninth Circuit addressed a scenario in which the appellants had contended that during a post-shooting investigation, all of the officers had occasion to go meet up outside and sort of like, you know, look at the various facts of the case and come to some sort of agreement as to how they were going to respond as to why the individual had odd injuries to his shoulder and his arm. And exactly in that case, we have the same situation where. . . No, because that's a conversation. That was a question about whether the officers had huddled and come up with a story. But there was a conflict as to whether or not that story was true. But we have a photograph here. We have a couple of different photographs that are inconsistent. And we have statements in Ting that were allegedly inconsistent, based upon the self-serving representations of the appellants. So there was a conflict of evidence, but that conflict of evidence only rose to the level of an uncorroborated suspicion. Judge Carney really got this right when he looked at this evidence, the entire matrix of evidence, and he assessed it through the prism of Ting. He assessed it through the prism of Radcliffe v. Rainbow Construction, a 2001 decision from the Ninth Circuit. And when he viewed it through the prism of Hillbloom v. County of Fresno, a 2010 decision from the Eastern District of California, all of those cases in a similar fashion dealt with alleged conflicts in evidence that were then used by the appellants to create a tall tale as to what conceivably could have occurred under the circumstances. The problem is we don't have any direct evidence. We don't have any circumstantial evidence of a meeting of the minds between these officers. You still haven't answered my question. If it wasn't conspiracy between Lavelle and Krogman that got Lavelle to say the cigarette box and the black-handled blade was there when I first arrived, what was it? A mistake of fact, as Your Honor pointed out in your question to counsel. And that makes an issue of fact, a triable issue of fact, doesn't it? I don't think so. When we look at what's required for a conspiracy claim and what we need to prove relative to Krogman and Lavelle, they need to have agreed on some level. And we don't have evidence of that agreement, either tacit or direct. Is your position there has to be direct evidence of an agreement? No. So the circumstantial evidence isn't good enough? And what Judge Bea is trying to get you to answer is why not? Because in this particular case And I think your answer is that no reasonable juror could find it here. It has to be. That's correct. Because the problem is, is that the circumstantial evidence in this case, while evocative of one particular explanation, doesn't prove that these individuals agreed tacitly to deprive these individuals of their civil rights. But isn't one of the explanations that it's evocative of the explanation that the plaintiffs want us to buy into? And, of course, we're not buying into anything. Our question here is whether or not there's an issue of fact. But he only needs one. Right. I understand that. But I think the confusion that's arised here is that they've taken all of these sort of hyper-technical little facts about where a cigarette pack here was, where a knife blade was, and from that premise of their location and their disposition, the only conclusion that appeals to them. No. It's not the only. They only need one. I understand that. But conveniently, that conclusion happens to be that this evidence was spoliated, that it was tampered with. Right. That's what he wants the jury to decide. Right. I don't know what the jury's going to decide. But if there's enough circumstantial evidence that a reasonable juror could decide that, why doesn't he win? Because I don't think in this particular case there is a sufficient amount of circumstantial evidence that evidences a meeting of the minds of these officers. We don't weigh sufficiency of circumstantial evidence. We weigh the existence of a triable issue of fact. I agree. And I just do not see in Judge Carney's ruling in this case any legal error. I don't see it. Honestly. I see an evaluation of controlling precedent. I see an evaluation of all of the facts that Your Honors have pointed out here today. Very astutely. But the problem was, is that Judge Carney indicated that just like in Ting, just like in Radcliffe, just as in Hillbloom, this rose to the level of a sort of tall-tale narrative. It was the only conclusion is spoliation. Where are you getting this? It's like an Oliver Stone novel. And so the problem was, is that the Court said we're not here to entertain the dramatic tall-tale narratives of the appellants. That's not what should go to a jury. The metaphysical considerations of what possibly could have existed under the circumstances isn't evidence. It isn't direct evidence, and it's not sufficient circumstantial evidence for which a reasonable juror could conclude that these individuals were deprived of their civil rights. A good jury argument. Unless there are any further questions, I would submit, Your Honors. And thank you very much for your time. Thank you. I think I'll spare all of you any further comment and not use my remaining time. Thank you.  Thank you very much.
judges: Silverman, Bea, Christen